IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| JOY R. HENSLEY, )<br>)<br>   *Plaintiff*, )<br>)<br>v. )<br>)<br>MICHAEL ASTRUE, )<br>**Commissioner of Social Security,** )<br>)<br>   *Defendant*. ) | **Case No. 2:09-cv-00101**<br>**Judge Nixon**<br>**Magistrate Judge Brown** |

**ORDER**

      Pending before the Court is Plaintiff Joy R. Hensley's ("Plaintiff") Motion for Judgment on the Administrative Record ("Plaintiff's Motion") (Doc. No. 18) with supporting Memorandum (Doc. No. 19). Defendant, Michael Astrue, Commissioner of Social Security ("Defendant" or "Commissioner"), filed a Response in Opposition (Doc. No. 24), to which Plaintiff replied (Doc. No. 25). Magistrate Judge Brown issued a Report and Recommendation ("Report") that Plaintiff's Motion be denied and that the decision of the Commissioner be affirmed. (Doc. No. 26.) Plaintiff filed Objections to the Report (Doc. No. 27), to which Defendant filed a Response (Doc. No. 28). Upon review of the Magistrate Judge's Report and for the reasons discussed herein, Plaintiff's motions is **GRANTED in part** and **DENIED in part**. The Court **REMANDS** the case for further administrative proceedings.

**I.  BACKGROUND**

    *A. Procedural Background*

      Plaintiff filed an application for Disability Insurance Benefits ("DIB") and Social Security Income ("SSI") on January 24, 2007 (Tr. 94, 96), asserting disability due to post-

1

traumatic stress disorder, obsessive-compulsive disorder, bipolar disorder, panic disorder, dysthymia, vertigo, anxiety, depression, stress, obesity, and allergies. (Doc. No. 19 at 2.) Plaintiff's application was first denied on March 23, 2007, and again after reconsideration on May 18, 2007. (Tr. 74-77.) Plaintiff's request for a hearing before an Administrative Law Judge ("ALJ") was granted (Tr. 93) and the hearing took place on March 11, 2009 (Tr. 9-19). ALJ James A. Sparks denied Plaintiff's claim on April 22, 2009. (Tr. 9-19.) The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2011.

2. The claimant has not engaged in substantial gainful activity since January 10, 2007, the alleged onset date (20 CFR 416.971 *et seq*.).

3. The claimant has the following severe impairments: personality disorder, not otherwise specified; anxiety disorder; depression; and panic disorder (20 C.F.R. 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526, 416.925 and 416.926).

5. The claimant's mental impairment does not meet or medically equal the criteria of listings 12.04, 12.06, and 12.08. In making this finding, the undersigned has considered whether the "paragraph B" criteria are satisfied. To satisfy the "paragraph B" criteria, the mental impairment must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. A marked limitation means more than moderate but less than extreme. Repeated episodes of decompensation, each of extended duration, means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks.

6. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: Due to mental difficulties, the claimant is not limited in the ability to understand and remember. The claimant will have some difficulty in persistence, pace, and completing tasks but she still can do. She is limited in the ability to interact with coworkers and supervisors but is able to function in work-like

settings. She cannot deal effectively with the general public. The claimant will have some difficulty with maintenance of adaptation but can set independent goals.

7. The claimant is capable of performing past relevant work as a gluer (factory) sorter. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 C.F.R. 404.1565 and 416.965).

(Tr. 14–19.)

On September 5, 2009, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner in this case. (Tr. 1-8.) On October 20, 2009, Plaintiff filed this action to obtain judicial review of the ALJ's final decision, pursuant to 42 U.S.C. § 405(g). (Doc. No. 1.) On April 5, 2010, Plaintiff filed a Motion for Judgment on the Record (Doc. No. 18) to which the Government responded on June 18, 2010 (Doc. No 24). Plaintiff filed a reply on July 8, 2010. (Doc. No. 25.) On August 2, 2010, Magistrate Judge Brown recommended that the ALJ's decision be affirmed and the Plaintiff's motion be denied. (Doc. No. 26.) Plaintiff asserts two objections to the Magistrate Judge's findings on August 16, 2010, specifically:

1. Plaintiff objects to the recommended finding that the ALJ appropriately considered the assessment of Dr. Viswa Durvasula, treating psychiatrist.

2. Plaintiff objects to the recommended finding that the ALJ appropriately considered listing 12.05C in its decision.

(Doc. No. 27.) Defendant filed a Response on August 30, 2010. (Doc. No. 28.) The Court discusses the merits of the Plaintiff's objections below.

*B. Factual Background*

The Court adopts the facts as stated in the Review of the Record in Magistrate Judge Brown's Report (Doc. No. 26 at 3-11).

3

## II. STANDARD OF REVIEW

The Court's review of the Report is *de novo*. 28 U.S.C. § 636(b). This review, however, is limited to "a determination of whether substantial evidence exists in the record to support the [Commissioner's] decision and to a review for any legal errors." *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Title II of the Social Security Act provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Accordingly, the reviewing court will uphold the ALJ's decision if it is supported by substantial evidence. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Substantial evidence is a term of art and is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Comm'r of Soc. Sec.*, 105 F.3d 244, 245 (6th Cir. 1996) (citing *Consol. Edison*, 305 U.S. at 229).

"Where substantial evidence supports the Secretary's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion." *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc)). This standard of review is consistent with the well-settled rule that the reviewing court in a disability hearing appeal is not to weigh the evidence or make credibility determinations, because these factual determinations are left to the ALJ and to the Commissioner. *Hogg v. Sullivan*, 987 F.2d 328, 331 (6th Cir. 1993); *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). Thus, even if the Court would have come to different factual conclusions as to

the Plaintiff's claim on the merits than those of the ALJ, the Commissioner's findings must be affirmed if they are supported by substantial evidence. *Hogg*, 987 F.2d at 331.

### III. PLAINTIFF'S OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT

*A. Plaintiff objects to the Magistrate Judge's recommendation that the ALJ appropriately considered the assessment of treating psychiatrist Dr. Viswa Durvasula.*

The Magistrate Judge found substantial evidence to support the ALJ's assessment of Plaintiff's residual functional capacity ("RFC"), determining that it appropriately reflected the opinions of both Dr. Viswa Durvasula and Dr. Lawrence Edwards, two of Plaintiff's doctors. (Doc. No. 26 at 18.) Plaintiff, however, asserts that the ALJ erred in failing to discuss the weight given to the opinions of Dr. Durvasula, a treating psychiatrist, while acknowledging the "great weight" given to the assessment of Dr. Edwards. (Doc. No. 27 at 1-2.) Plaintiff further argues that this failure signifies an implicit rejection of Dr. Durvasula's assessment. (Doc. No. 27 at 2.)

Treating sources provide medical treatment or evaluation as part of an ongoing relationship with the claimant, 20 C.F.R. § 404.1502, and it is well-settled that their opinions are generally entitled to significant weight, *see Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007); *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 90 (6th Cir. 1985). Although there are various factors that influence the specific weight given to a treating source's opinions, an ALJ must always provide "good reasons" for his determination. 20 C.F.R. § 404.1527(d); *see also Shelman v. Heckler*, 821 F.2d 316, 321 (1987). These reasons must be "'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Blakely v Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir. 2009) (quoting SSR 96-2p, 1996 WL 374188, at *4 (July 2, 1996)). In the absence of such clarity, a case should be remanded to the Commissioner. *See*

*Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544-45 (6th Cir. 2004)).

There is a two-fold purpose for requiring the ALJ to explain the weight given to treating sources. First, it allows plaintiffs to better understand their cases, especially when a physician has previously deemed them disabled. *Blakely*, 581 F.3d at 407. Second, it facilitates more effective review by requiring the ALJ to provide extensive reasoning in his decision. *Id.* at 407 (citing *Wilson,* 378 F.3d at 544). Because this procedural requirement helps ensure that a denied claimant receives fair process, failure to follow it is considered a lack of substantial evidence, even where the ALJ's conclusion is supported by the record. *Blakely*, 581 F.3d at 407 (citing *Rogers*, 486 F.3d at 243).

In rare cases, failure to comply with this procedural requirement may be considered harmless error. *See, e.g., Blakely,* 581 F.3d at 409; *Wilson*, 378 F.3d at 546-47. For example, when a treating physician's opinion lacks any medical credibility, the ALJ's failure to give good reason for the weight accorded to this opinion may be excusable. *Blakely*, 581 F.3d at 409 (citing *Wilson*, 378 F.3d at 547). It is also possible that if the ALJ adopts the opinion of a treating source—or at least makes findings consistent with the opinion—it may be irrelevant that the ALJ did not give weight to the treating physician's opinion, or articulate reasons why. *Wilson*, 378 F.3d at 547; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2004). In *Heston*, for example, the Sixth Circuit declined to remand a case to the Commissioner, even though the ALJ had neglected to mention the weight accorded one of the plaintiff's treating physicians. *Heston*, 245 F.3d at 536. The court reasoned that since the ALJ had considered the *same specific limitations* described by this treating physician, and had relied upon these limitations in its decision, it was harmless error that the ALJ did not reference this source. *Id.*

Here, the ALJ erred in failing to discuss the weight accorded to Dr. Durvasula's opinions. Dr. Durvasula saw Plaintiff multiple times over the course of several months, prescribing drugs and counseling Plaintiff as her treating psychiatrist. (Tr. 496-545.) None of the medical findings in the ALJ's decision, however, were explicitly attributed to Dr. Durvasula, nor at any point did the ALJ articulate if any weight was accorded this treating source's opinions. (Tr. 16-19.) Rather, the ALJ gave "great weight" to the opinion of Dr. Edwards, continually referencing him throughout the decision. (Tr. 16-19.) Dr. Durvasula is mentioned only twice, simply as Plaintiff's psychiatrist. (Tr. 17, 18.)

By failing to provide any description of the weight accorded Dr. Durvasula's opinions, the ALJ did not give the required "good reasons" for his incorporation of these opinions into his assessment. *See* 20 C.F.R. § 404.1527(d). This absence of clarity typically necessitates a remand to the ALJ, *see Hensley*, 573 F.3d at 266, especially when failing to promote effective review, *Blakely,* 581 F.3d at 407. In the case at bar, neither party agrees on how much each doctor's opinion factored into the RFC assessment (Doc. No. 25 at 1, 3; Doc. No. 27 at 1-2; Doc. No. 28 at 1-2), nor could the Magistrate Judge determine the specific weight accorded each opinion (Doc. No. 26 at 17-18). As the Sixth Circuit has previously found, failure to follow this "reason-giving requirement" is often considered lack of substantial evidence. *Blakely*, 581 F.3d at 407 (citing *Rogers*, 486 F.3d at 243).

Furthermore, the ALJ's failure to describe the weight accorded to Dr. Durvasula does not constitute harmless error. Unlike *Heston*, where the ALJ incorporated the same specific limitations described by an ignored treating physician, *Heston,* 245 F.3d at 536, in the case at bar, the ALJ's findings are not entirely consistent with the opinion of Dr. Durvasula. (Tr. 15; Doc. No. 26 at 18). Though some of the opinions of Dr. Durvasula may have been considered in

7

the RFC assessment, (Tr. 15, 501-06), even Defendant acknowledges that the ALJ relied on the opinions of Dr. Edwards to qualify those of Dr. Durvasula, (Doc. No. 24 at 18). Specifically, Dr. Edwards believed that Plaintiff had exaggerated or even lied about certain symptoms, and the ALJ admittedly gave "great weight" to this assessment in finding that many of Plaintiff's limitations were not as extreme Dr. Durvasula had observed. (Tr. 16-19; Doc. No. 24 at 18.) Because the ALJ did not attribute the specific limitations observed by Dr. Durvasula, the failure to describe the weight accorded to Dr. Durvasula does not constitute harmless error. *See Heston,* 245 F.3d at 536; *Wilson*, 378 F.3d at 547-48.

> B. *Plaintiff objects to the Magistrate's recommendation that the ALJ appropriately considered Listing 12.05(C).*

The Magistrate Judge found substantial evidence to support the ALJ's determination that Plaintiff was not disabled under 20 C.F.R. Part 404, Subpt. P, App. 1. (Doc. No. 26 at 14, 16.) Plaintiff, conversely, asserts that the ALJ failed to specifically consider Listing 12.05(C) for mental retardation, and further claims that she meets the criteria set forth therein. (Doc. No. 27 at 2.) Plaintiff relies primarily on a December, 2007 IQ evaluation, and further argues that she suffers from a "mental impairment imposing an additional and significant work-related limitation of function." (Doc. No. 27 at 3.)

It is well-settled that a claimant for disability benefits must prove that an impairment meets all of the requirements of a particular listing. *See, e.g., Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2009). To satisfy the requirements of Listing 12.05, a claimant must meet both a diagnostic description of mental retardation *and* the particular severity requirements of one of four subsections. 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.00(A). The diagnostic description specifies that mental retardation refers to "significantly subaverage intellectual

8

functioning with deficits in adaptive functioning initially manifested during the developmental period." *Id.* § 12.05. More specifically, evidence should demonstrate that the claimant's alleged impairment manifested before age twenty-two. *Id.* Section C specifies that a claimant must have a verbal, performance, or full-scale IQ between sixty and seventy, as well as a physical or mental impairment imposing an additional and significant "work-related limitation of function." *Id.* § 12.05(C).

Courts have combined these two inquiries by requiring a claimant seeking Listing 12.05(C) status to furnish evidence of IQ scores between sixty and seventy during their developmental years. *See, e.g., Burrell v. Comm'r of Soc. Sec.*, No. 99-4070, 2000 WL 1827799, at *2 (6th Cir. Dec. 8, 2000)*; Bilka v. Comm'r of Soc. Sec.*, 252 F. Supp. 2d 472, 475 (N.D. Ohio 2002). In *Burrell,* the Sixth Circuit held that a claimant's recent IQ test did not satisfy 12.05(C) when testing performed when the claimant was fourteen years old had yielded a result above seventy. *Burrell*, 2000 WL 1827799, at *2. Furthermore, in *Foster v. Halter*, the Sixth Circuit reasoned that testing done when the plaintiff was forty-two years old was hardly dispositive of deficits in adaptive functioning during the developmental period. 279 F.3d 348, 345-55 (6th Cir. 2001). Although requiring evidence of IQ tests before the age of twenty-two would unfairly punish those who could not afford testing, the court in *Bilka* reasoned that, when available, developmental-period IQ tests cannot be discounted and will supersede those given after the developmental period. 252 F. Supp. 2d at 475. This emphasis on the developmental years stems from the belief that, in the absence of neurological trauma, an individual's intellect remains relatively constant after age twenty-two. *Bilka,* 252 F. Supp. 2d at 475 (citing *McPeek v. Sec'y of Health & Human Servs.*, No. 93-5204, 1994 WL 56929, at *2 (6th Cir. Feb. 24, 1994)).

In addition to the IQ determination, some courts have looked for other evidence of a "deficit in adaptive functioning" initially manifested during the developmental years. *See, e.g., Foster,* 279 F.3d at 354-55. In *Foster*, for example, the court evaluated the claimant's work and school history to determine adaptive functioning abilities. *Id.* The court in *Bilka* also evaluated the claimant's vocational achievements to further support the conclusions it drew from the claimant's IQ results. *Bilka,* 252 F. Supp. 2d at 475. This is necessarily a fact-specific inquiry.

Here, substantial evidence supports the ALJ's determination that Plaintiff did not meet her burden of proving a disability under Listing 12.05(C). (Tr. 15.) Specifically, evidence before the ALJ shows that Plaintiff's IQ did not fall within the prescribed range during her developmental years, nor did she otherwise demonstrate a deficit in adaptive functioning during this time.

First, an IQ test given to Plaintiff at the age of fourteen resulted in a score between 71 and 81, above the upper limit required by 12.05(C). (Tr. 202.) Although a test administered when Plaintiff was almost forty shows that her IQ fell within the 60-70 range, (Tr. 479), the courts in both *Burrell* and *Bilka* held that a current IQ test cannot be relied upon when testing before age twenty-two yielded higher results. *Burrell*, 2000 WL 1827799, at *2; *Bilka*, 252 F. Supp. 2d at 475. The ALJ is only required to consider the later IQ test if Plaintiff demonstrated significant neurological trauma since her developmental years. *Bilka,* 252 F. Supp. 2d at 475 (citing *McPeek,* 1994 WL 56929, at *2). There is no evidence of this type of brain injury in the record.

In addition to this original IQ test, the record shows substantial evidence to support the finding that Plaintiff did not demonstrate a deficit in adaptive functioning first occurring during her developmental years. From kindergarten through seventh grade, Plaintiff demonstrated

10

"average" and "outstanding" levels of courtesy, cooperation, reliability, and devotion to ideals. (Tr. 227.) Plaintiff's eighth-grade teacher noted that she demonstrated average responsibility for her age and average ability complete assignments. (Tr. 209.) Furthermore, Plaintiff earned a high school diploma in 2000 (Tr. 23, 228) and worked as a bus driver for seven years (Tr. 317). The Court finds that this constitutes substantial evidence on which the ALJ could have concluded that Plaintiff does not satisfy the requirements of Listing 12.05(C).

## IV. CONCLUSION

For the reasons stated above, Plaintiff's Motion is **GRANTED in part** and **DENIED in part.** The Court **REMANDS for further proceedings consistent with this order** in regards to the ALJ's treatment of Dr. Durvasula's opinions, and **ADOPTS** Magistrate Judge Brown's Report in all other respects.

It is so ORDERED.

Entered this   17th   day of June, 2011.

JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT